THE WILLIAMS LAW GROUP
Andrew Williams, Esq.
Attorney for Plaintiff
6273 Sunset Drive
Suite D3
South Miami, Florida 33143
Telephone: (253) 970-1683
CA Bar No. 310526
Email: Andrew@TheWilliamsLG.com
Secondary Email: WilliamsLawFlorida@gmail.com

**Attorney for Plaintiff, Victoria Inoyo**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTORIA INOYO, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>VICTOR VICTOR WORLDWIDE, INC., a New York corporation;<br>UNIVERSAL MUSIC GROUP, INC., a Delaware corporation;<br>REPUBLIC RECORDS, INC., a New York corporation;<br>WARNER CHAPPELL MUSIC, INC., and DOES 1 through 100, inclusive<br><br>Defendants. | Case No.:<br><br>COMPLAINT FOR<br><br>1. COPYRIGHT INFRINGEMENT<br>2. RIGHT OF PUBLICITY<br>3. UNJUST ENRICHMENT<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT

NOW COMES Plaintiff, VICTORIA INOYO ("Ms. Inoyo" or "Plaintiff"), by and through undersigned counsel and hereby files this Complaint and Demand for Jury Trial against Defendants, VICTOR VICTOR WORLDWIDE, INC ("VVW"); UNIVERSAL MUSIC GROUP ("UMG"); REPUBLIC RECORDS ("REPUBLIC") (VVW, UMG, and REPUBLIC, collectively, shall be referred to as, the "LABEL"); WARNER CHAPPELL MUSIC ("WARNER") and DOES 1 through 100, inclusive, (all defendants collectively shall be known as, the "DEFENDANTS") and states as follows:

## INTRODUCTION

1. This is a suit based upon violations of the United States Copyright Act (the "Act") and tort claims. The Plaintiff has specifically plead counts of: Copyright Infringement, Violations of Plaintiff's Right of Publicity, and/or additionally, or in the alternative, a claim for Unjust Enrichment. Plaintiff, however, may move to amend these counts should additional counts and/or claims against the DEFENDANTS be discovered.

2. Plaintiff is seeking damages in an amount to be proved at trial in excess of Seventy-Five Thousand ($75,000.00), including an award of, costs, and attorney's fees.

## THE PARTIES, JURISDICTION, AND VENUE

3. Plaintiff is an individual, and she was at all relevant times mentioned herein a citizen of the county of Los Angeles, California.

4. Defendant VVW is a New York corporation with its principal place of business in the State of New York. At all relevant times herein, VVW conducted business in the State of California.

5. Defendant UMG is a Delaware corporation with its principal place of business in the State of California. At all relevant times herein, UMG conducted business in the State of California.

6. Defendant REPUBLIC is a New York corporation with its principal place of business in the State of California. At all relevant times herein, REPUBLIC conducted business in the State of California.

7. Defendant WARNER is a Delaware corporation with its principal place of business in the State of New York. At all relevant times herein, WARNER conducted business in the State of California.

8. The full extent of the facts linking the fictitiously designated Defendants with the cause(s) of actions herein is unknown to PLAINTIFF. Further the true names and capacities, whether individual, corporate, associate, plural or partnership, or otherwise, of Defendants, DOES 1 through 100, inclusive, are unknown to PLAINTIFF. PLAINTIFF therefore sues Defendants by such fictitious names.

PLAINTIFF is informed and believes, and thereupon alleges, that each of the Defendants designated herein as a DOE is negligently, wantonly, recklessly, tortuously, intentionally and/or unlawfully responsible in some manner for the events and happenings hereinafter referred to, and negligently, wantonly, recklessly, tortuously, intentionally and/or unlawfully, proximately caused injuries and damages to PLAINTIF, as hereinafter alleged. PLAINTIFFS will ask leave of this Court to amend this Complaint to show said Defendants' names and capacities once the same have been ascertained.

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1338(a) because it arises under an Act of Congress, the United States Copyright Act.

10. Venue is proper in this District pursuant to § 1391, in that each of the Defendants resides and/or conducts business in Los Angeles County, California, and a substantial part of the events giving rise to these claims occurred in Los Angeles County, California.

**GENERAL ALLEGATIONS**

11. On or around December 14, 2019, Ms. Inoyo attended a music festival known as Rolling Loud in Los Angeles, California.

12. Rolling Loud features some of the biggest names in hip-hop music and it is a traveling music festival with domestic stops in Miami, Oakland and Los Angeles throughout the course of the year.

13. Ms. Inoyo, who is a free-lance journalist and blogger, attended Rolling Loud as a member of the media in order to document the festival, conduct interviews with various performing artists, and to capture content.

14. While she was at Rolling Loud, Ms. Inoyo conducted interviews with several performing artists, including a recording artist by the name of Bashar Jackson p/k/a Pop Smoke ("Jackson").

15. In preparation for her interview with Jackson (the "Interview"), Ms. Inoyo created her own questions, which she asked of Jackson, and to which he responded, while Ms. Inoyo's team recorded the Interview.

16. On January 6, 2020, Ms. Inoyo fixed the Interview and published it via the YouTube channel, "Vicky's View," which she owns and where she publishes her various interviews and content.

17. Ms. Inoyo owns a valid copyright in the Interview, which was registered with the United States Copyright Office in 2020, and which consists of both her and Jackson's vocals.

18. The Interview has a registration number of PA0002253859.

19. On or around June 16, 2020, the LABEL reached out to Ms. Inoyo and sought her permission to include the Interview, her vocals and/or her appearance on Jackson's then soon-to-be released recording album, "Shoot for the Stars, Aim for the Moon" (the "Album").

20. The only consideration that the LABEL offered to Ms. Inoyo in exchange for its use of the Interview on the Album was a mere one ($1) dollar.

21. Ms. Inoyo was interested in the opportunity of being featured on the Album; however, as the rights owner to the Interview, and because the Interview contained her own proprietary questions and vocals, Ms. Inoyo wanted to negotiate terms with the LABEL that she viewed as more equitable and just.

22. On June 17, 2020, Ms. Inoyo, through counsel, contacted the LABEL in an effort to discuss and negotiate the proposed terms of the LABEL's use of the Interview.

23. Terese Joseph ("Joseph"), an agent/employee of the LABEL responded to the request to discuss the terms for the LABEL's use of the Interview on behalf of the LABEL on June 18, 2020.

24. Eventually, Ms. Inoyo's counsel and Joseph spoke on the phone on or around June 22, 2020, in regards to Ms. Inoyo's desired compensation/benefits in exchange for the LABEL's use of the Interview and her vocals.

25. After Ms. Inoyo's counsel and Joseph engaged in their telephonic discussion of the LABEL's use of the Interview, Joseph emailed Ms. Inoyo's counsel a proposed counter offer in which she stated that the "deadline on [the Album was] Wednesday" or June 24, 2020, and that an answer was thus needed "ASAP".

26. On June 23, 2020, Joseph emailed Ms. Inoyo's counsel to inform him that the LABEL would "no longer be using [Ms. Inoyo's] vocals" and presumably the Interview, which it failed to license.

27. On or around July 3, 2020, the LABEL commercially released the Album for global distribution world-wide.

28. To the shock and chagrin of Ms. Inoyo, the LABEL used the Interview without Ms. Inoyo's consent, or permission, and without compensating her. The Interview was featured on the track called "Tunnel Vision (Outro)" (the "Song").

29. In addition to releasing the Album, the LABEL also released an audio-visual work for the Song (the "Music Video") on July 3, 2020, and this Music Video also featured and included the Interview.

30. The Album quickly rose to "number 1" on the Billboard 200 chart, which ranks the most popular music albums and EPs in the United States and the Album has received wide-spread acclaim and appeal.

31. In fact, the Album received so much acclaim that a "deluxe album" with fifteen (15) additional tracks was released on July 20, 2020 (the "Deluxe Album"). The Deluxe Album also featured and included the Song and the Interview.

32. Despite its knowing, intentional and bad-faith use of the Interview on the Album, the LABEL failed to make any attempt to cure its infringing use of the Interview before it released the Deluxe Album.

33. Ms. Inoyo's vocals and the Interview are featured in approximately 16 seconds of the Song, which is approximately 2 minutes and 12 seconds long, or roughly 12.12% of the Song.

34. The LABEL's use of Ms. Inoyo's vocals and the Interview in the Song is, and was, unauthorized and in bad-faith.

35. The LABEL knew that it did not have Ms. Inoyo's permission to use the Interview; yet, rather than negotiate with Ms. Inoyo in good-faith in order to obtain her permission to use the Interview, the LABEL inexcusably and unjustifiably used the Interview and released the Album and the Song for commercial distribution in violation of, among other things, Ms. Inoyo's copyrights and her intellectual property.

36. The LABEL and WARNER knew, or reasonably should have known, that the Album and the Song contained the Interview.

37. The LABEL and WARNER, while working in conjunction with each other, have obtained, on information and belief, hundreds of thousands, if not millions of dollars associated with their exploitation and use of the Interview through the sale, downloads, licensing, synchronization and digital streaming of the Song, the Album, and the Music Video in violation of Ms. Inoyo's rights.

**COUNT I**
**COPYRIGHT INFRINGEMENT**
(by PLAINTIFF against the LABEL)

38. PLAINTIFF hereby repeats, realleges and incorporates by reference each and every allegation contained hereinabove and incorporates the same herein as though fully set forth herein.

39. Through the LABEL's actions as described above, the LABEL has infringed and will continue to infringe upon Ms. Inoyo's rights and interest in the Interview and her vocals in violation of Ms. Inoyo's exclusive rights under 17 U.S.C. § 101 *et seq* as the LABEL never had any authorization or other permission to include the Interview on the Song, the Album, or in the Music Video.

40. The LABEL's actions, which attempted to circumvent Ms. Inoyo's good-faith attempts to negotiate the LABEL's use of the Interview demonstrate that the LABEL's infringement of the Interview was deliberate, willful, and in utter disregard of Ms. Inoyo's rights.

41. Not only did the LABEL not have permission to use the Interview, the LABEL did not and has

not provided Ms. Inoyo with any equitable compensation for its use of the Interview.

42. Given the commercial success of the Album, the LABEL has realized unjust profits, gains and advantages as a proximate result of its infringement, and it will continue realizing unjust profits, gains and advantages as a proximate result of its infringement, as long as such infringement is permitted to continue.

43. As a direct and proximate result of the DEFENDANTS' willful copyright infringement, Ms. Inoyo has suffered and she will continue to suffer, monetary losses and a lack of proper credit. Ms. Inoyo is entitled to recover from the LABEL, in an amount to be determined at trial, the damages she has sustained and will sustain, and any gains, profits and advantages obtained by the LABEL as a result of its infringing acts and its use and publication of the Interview.

44. Ms. Inoyo is entitled to recover damages from the LABEL that include, but are not limited to her attorneys' fees, the costs of this action that she has sustained and will sustain, and any gains, profits and advantages obtained by the LABEL as a result of its actions as have been alleged above.

45. At the present time, the amount of Ms. Inoyo's damages, gains, profits and advantages cannot be fully ascertained; however, such will be established according to proof at trial.

46. Ms. Inoyo anticipates that her damages will exceed $1.5 million given the LABEL's bad-faith, willful and intentional actions.

47. Ms. Inoyo is also entitled to recover statutory damages based upon the LABEL's willful infringement of her copyrights under the Act.

**COUNT II**
**VIOLATIONS OF RIGHT OF PUBLICITY UNDER CCP § 3344(a)**
(by PLAINTIFF against the LABEL)

48. PLAINTIFF hereby repeats, realleges and incorporates by reference each and every allegation contained hereinabove and incorporates the same herein as though fully set forth herein.

49. Through the LABEL's actions as described above, the LABEL violated Ms. Inoyo's right to

privacy and specifically her right of publicity under California Code of Civil Procedure Section 3344(a).

50. The LABEL's infringement of Ms. Inoyo's copyrights in the Interview was deliberate, willful, and in utter disregard of Ms. Inoyo's rights.

51. The LABEL knowingly and intentionally used the Interview on the Song, the Album, and the Music Video, to amass substantial wealth and income for itself.

52. The LABEL's use of the Interview was for commercial purposes and its use of the Interview did not occur in connection with any news, public affairs, sports broadcast, or political campaign/commentary.

53. The LABEL did not have Ms. Inoyo's consent or authorization to use the Interview for any commercial purpose(s) and the LABEL was well aware of, and knew of, this.

54. As a result of the LABEL's use of the Interview, Ms. Inoyo has been harmed in a physical, emotional and pecuniary manner.

55. The LABEL's conduct was a substantial factor in causing Ms. Inoyo's harm.

56. Ms. Inoyo is entitled to recover damages from the LABEL that include her attorneys' fees and the costs she has sustained and will sustain, and any gains, profits and advantages that were obtained by the LABEL as a result of its actions as have been described above.

57. The LABEL did not have Ms. Inoyo's consent or authorization to use the Interview for any commercial purpose(s) and the LABEL knew of, and was aware of, this.

58. At the present time, the amount of Ms. Inoyo's damages, and the LABEL's gains, profits and advantages cannot be fully ascertained; however, such will be established according to proof at trial.

59. Ms. Inoyo anticipates that her damages will exceed $1.5 million given the LABEL's bad-faith, willful and intentional actions.

## COUNT III
## UNJUST ENRICHMENT
## (PLAINTIFF against the LABEL)

60. PLAINTIFF hereby repeats, realleges and incorporates by reference each and every allegation

contained hereinabove and incorporates the same herein as though fully set forth herein.

61. On or about July 3, 2020, the LABEL released the Album, the Song and the Music Video, which featured the Interview, for commercial purposes.

62. The Song, which was featured on the Album, utilizes the Interview and contains the Interview on approximately 16 seconds or 12.12% of the Song.

63. Through the LABEL's use of the Interview, Ms. Inoyo conferred a benefit upon the LABEL.

64. The LABEL was, and is aware of, and had knowledge of, the benefit that it received from Ms. Inoyo when it released the Song, the Album and the Music Video, all of which feature the Interview.

65. The LABEL intended to receive, and ultimately did/has received financial gain and compensation through the release of the Song, the Album and the Music Video based upon sales and streams of the Album, the Song and the Music Video.

66. Notwithstanding the financial gain and compensation that the LABEL received through its infringing usage of the Interview, Ms. Inoyo has not received *any* financial gain or compensation through the commercial release of the Song, the Album and/or the Music Video whatsoever.

67. Ms. Inoyo has also not been properly credited for her intellectual property, the Interview.

68. The circumstances are such that it would be inequitable for the LABEL to retain the benefit that was conferred on it by Ms. Inoyo, without providing any benefit to Ms. Inoyo.

**COUNT IV**
**COPYRIGHT INFRINGEMENT**
(by PLAINTIFF against the WARNER)

69. PLAINTIFF hereby repeats, realleges and incorporates by reference each and every allegation contained hereinabove and incorporates the same herein as though fully set forth herein.

70. On information and belief, WARNER received an interest in the Song and the Album on or around June 16, 2020.

71. WARNER has unlawfully used the Interview and it has never sought Ms. Inoyo's consent,

permission or approval to use the Interview.

72. WARNER, with the assistance of the LABEL, has infringed upon Ms. Inoyo's rights under the Act.

73. WARNER, with the assistance of the LABEL, has marketed, licensed and/or otherwise benefitted from its exploitation of the Interview in violation of Ms. Inoyo's rights under the Act.

74. Upon information and belief, WARNER has received monies for its infringing use of the Interview and it has paid or caused others to pay the LABEL and others monies associated with its infringing use of the Interview.

75. WARNER, with the assistance of the LABEL has violated Ms. Inoyo's rights to control, sell, market, and/or distribute the Interview and/or any derivative works of the Interview in violation of Ms. Inoyo's rights under the Act.

76. Given the commercial success of the Album, WARNER has realized unjust profits, gains and advantages as a proximate result of its infringement, and it will continue realizing unjust profits, gains and advantages as a proximate result of its infringement, as long as such infringement is permitted to continue.

77. As a direct and proximate result of the DEFENDANTS' willful copyright infringement, Ms. Inoyo has suffered and she will continue to suffer, monetary losses and a lack of proper credit. Ms. Inoyo is entitled to recover from WARNER, in an amount to be determined at trial, the damages she has sustained and will sustain, and any gains, profits and advantages obtained by WARNER as a result of its infringing acts and its use and publication of the Interview.

78. Ms. Inoyo is entitled to recover damages from WARNER that include, but are not limited to her attorneys' fees, the costs of this action that she has sustained and will sustain, and any gains, profits and advantages obtained by WARNER as a result of its actions as have been alleged above.

79. At the present time, the amount of Ms. Inoyo's damages, and the gains, profits and advantages

received by WARNER cannot be fully ascertained; however, such will be established according to proof at trial.

**COUNT V**
**UNJUST ENRICHMENT**
**(PLAINTIFF against WARNER)**

80. PLAINTIFF hereby repeats, realleges and incorporates by reference each and every allegation contained hereinabove and incorporates the same herein as though fully set forth herein.

81. On or about June 16, 2020, WARNER, on information and belief, received an interest in the Song and the Album.

82. On information and belief, pursuant to such interest, WARNER receives publishing income on all works written by Jackson, including the Song.

83. On July 3, 2020, the LABEL released the Album, the Song and the Music Video for commercial purposes, which all featured the Interview.

84. The Song, which is featured on the Album, utilizes the Interview and it contains the Interview on approximately 16 seconds or 12.12% of the Song.

85. Ms. Inoyo was never credited as a writer even though her proprietary words, thoughts and expressions are used in the Song.

86. WARNER has therefore been receiving monies that Ms. Inoyo is entitled to.

87. Through its use of the Interview, Ms. Inoyo conferred a benefit on WARNER who benefits through the sales of the Song and the Album and through streams of the Music Video.

88. WARNER was, and is aware of, and had knowledge of, or reasonably should have had knowledge of the benefit that it received from Ms. Inoyo, who has an authorship interest in the Song, the Album, and the Music Video based upon the use of the Interview.

89. WARNER intended to receive, and ultimately did/has received financial gain and compensation

through the release of the Song, the Album, and the Music Video and through sales and streams of the Song, the Album, and the Music Video.

90. Notwithstanding the financial gain and compensation that WARNER has received through its infringing use of the Interview, Ms. Inoyo has not received *any* financial gain or compensation through the commercial release of the Song, the Album and/or the Music Video, and Ms. Inoyo has not been properly credited for her contributions to the Song, the Album and the Music Video.

91. The circumstances are such that it would be inequitable for WARNER to retain the benefit that was conferred on it by Ms. Inoyo, without providing any benefit to Ms. Inoyo.

**WHEREFORE**, for the reasons set forth herein, PLAINTIFF respectfully requests that this Court award damages in her favor and against the DEFENDANTS and each of them as follows:

a. For general and special damages to be proven at trial in an amount in excess of $1.5 million dollars;

b. For an injunction, declaration, or other mandate that provides for Plaintiff to be properly credited as a "writer" on the Song;

c. For an injunction, declaration, or other mandate that provides for Plaintiff to receive the publishing percentages that she is entitled to as a "writer" on the Song;

d. For an injunction, declaration, or other mandate that provides for the DEFENDANTS to direct any and all third-parties whom they control to properly credit Plaintiff in the manner that they have the ability to do so, so Plaintiff receives proper credit going forward;

e. For a full and proper accounting of any and all monies earned by the Album;

f. For a full and proper accounting of any and all monies earned by the Song;

g. For a full and proper accounting of any and all monies earned by the Music Video;

h. For the respective plaque(s) and any other credit/ancillary benefit(s) that Plaintiff is entitled;

i. For any prescribed statutory damages;

j. For the costs of this action;

k. For attorney's fees;

l. For Interest; and

m. For any other and further legal and equitable relief this Court deems just and proper.

DATED this 19th day of November 2020.

**THE WILLIAMS LAW GROUP**

/s Andrew Williams, Esq.
BY: ANDREW WILLIAMS, ESQ.
California Bar No.: 310526
6273 Sunset Drive, Ste D3
South Miami, Florida 33143
Telephone: (253) 970-1683
Attorney for Plaintiff Victoria Inoyo
E-Service: Andrew@TheWilliamsLG.com
Secondary: WilliamsLawFlorida@gmail.com

**DEMAND FOR JURY TRIAL**

Plaintiff VICTORIA INOYO, hereby demand a trial by jury for all issues so triable.

DATED this 19th day of June 2020.

**THE WILLIAMS LAW GROUP**

/s Andrew Williams, Esq.

**RESERVATION OF RIGHTS**

Plaintiff VICTORIA INOYO reserves the right to further amend this Complaint, upon completion of her investigation and discovery, to assert any additional claims for relief against the Defendants or any other parties as may be warranted under the circumstances and as allowed by law. Plaintiff VICTORIA INOYO further reserves the right to seek and have punitive damages assessed against the Defendants.

DATED this 19th day of November 2020.

**THE WILLIAMS LAW GROUP**

/s Andrew Williams, Esq.